(574 P.2d 214)
No. 48,923

STATE OF KANSAS, *Appellee,* v. SYLVESTER COLLAZO, *Appellant.*

Opinion filed November 10, 1977.

*Lelyn J. Braun,* of Braun and Nyswonger, Chartered, of Garden City, for the appellant.

*Don Vsetecka,* county attorney, and *Curt T. Schneider,* attorney general, for the appellee.

Before FOTH, P.J., PARKS and SWINEHART, JJ.

FOTH, J.: Sylvester Collazo was convicted by a jury of the sale of heroin in violation of K.S.A. 1976 Supp. 65-4127a. He appeals, primarily alleging that the trial court erred by admitting hearsay testimony in violation of his constitutional right to confront the witnesses against him. We reverse and remand for a new trial.

The state's case rested almost entirely on the testimony of John Washington, an undercover narcotics agent for the Kansas Bureau of Investigation. Washington testified that he met the appellant through a man named Frank Crosley; that at their first meeting appellant agreed to sell an ounce of heroin for $1,200; and that the next day the appellant, accompanied by two unidentified Mexican males, met with Washington and Crosley and completed the sale.

Appellant's hearsay objection went to Washington's testimony relating conversations in which Crosley described appellant as a known and large scale drug dealer. Specifically, the appellant points to three statements admitted over his objection:

"Q. What did Mr. Crosley say about Mr. Collazo?

"A. He told me that if we ever got in a jam and we needed—and this party in question in Dodge City wouldn't sell us any crystal, methamphetamines, scheduled for substance, scheduled to substance, we could easily go to Mr.—go to Porky over in Garden City because Porky was the biggest thing in the west, you know.

"Q. Porky is this man here? [The defendant.]

"A. Yes, sir.

. . . . . . . . . . . . . . . .

"A. In reference to my report Mr. Crosley said, 'Let's go see the big man'. I said, 'Who are they?', 'Who is it?'. He says, 'Porky'. I said, 'Who is that? Is he cool?'. He said, 'Yeah, man, you know, he's the big man; he controls everything'. I said, 'Okay, let's go see him'.

. . . . . . . . . . . . . . . .

"A. Mr. Crosley informed me that Mr. Collazo was a very very rich man and he had sold a whole lot of dope brought in from Mexico along with wetbacks in this part of the country for farmers and ranchers and that he deals heavy in narcotics in this part of the country."

K.S.A. 60-460 provides that "[e]vidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible," with certain exceptions. The state urges that introduction of these statements, however, is not prohibited by the hearsay rule because they were repeated merely as background and foundation testimony to explain to the court and the jury the manner in which Washington made contact with the appellant, and not for "the truth of the matter stated." In several cases out-of-court statements have been held admissible when offered to explain the officer's conduct, and not for the truth of statements themselves. See *State v. Trotter,* 203 Kan. 31, 453 P.2d 93; *State v. Ritson,* 215 Kan. 742, 529 P.2d 90; *State v. Lopez,* 182 Kan. 46, 318 P.2d 662; *State v. Hollaway,* 214 Kan. 636, 522 P.2d 364. In none of these cases, however, were the statements as closely related to the defendant's guilt as they are here. In effect, Washington's repetition of the out-of-court declarations not only explained his interest in the defendant but also added damaging testimony about defendant's role as a drug dealer. In its latter

aspect the testimony was clearly hearsay. Compare, *State v. Thompson,* 221 Kan. 176, 558 P.2d 93.

The trial court thought the testimony was hearsay, *i.e.,* offered for the truth of Crosley's statements, but admissible because the declarant Crosley was "present at the hearing and available for cross-examination." (K.S.A. 60-460[a].) The state did not call Crosley, but the court concluded that he was present and available because he was in custody pending prosecution on an independent charge and subject to defense summons. However, *State v. Fisher,* 222 Kan. 76, 563 P.2d 1012, makes it clear that "calling a declarant as a defense witness is no substitute for cross-examining that declarant as a state's witness." (p. 81.) In *Fisher,* the witness was physically present in the courtroom but admission of her out-of-court statements was held to be reversible error, the court saying:

"Admission of a declarant's out-of-court statement does not violate the right of confrontation guaranteed by the Sixth Amendment to the United States Constitution and Section Ten of the Bill of Rights of the Kansas Constitution as long as the declarant has been called and testifies as a witness and is subject to full and effective cross-examination."

"In a criminal proceeding, the declarant must testify at trial before hearsay evidence of his out-of-court statements may be admitted under K.S.A. 60-460(a)." (*Id.,* Syl. 4 & 5.)

The state also argues that if there was error it was harmless. In determining whether the erroneous admission of this testimony constitutes harmless or reversible error, an appellate court must weigh the probable impact of the evidence on the jury. Because the error in this case infringed the appellant's constitutional right to confrontation, to find it harmless we would have to conclude, beyond a reasonable doubt, that "the error had little, if any, likelihood of having changed the result of the trial." (*State v. Hamilton,* 222 Kan. 341, 345, 564 P.2d 536. See, also, *State v. Thompson,* supra.) This we are not able to do. Aside from Washington's testimony, the only evidence against the appellant was the stipulation by the parties to the chemist's report that the substance allegedly purchased from the appellant contained heroin. Washington's supervisor described the activities of an undercover agent and stated that Washington was assigned to the area, but none of his testimony implicated the appellant. Thus the only direct evidence against the appellant was the testimony of Washington. Hence Crosley's "testimony" as to the appellant's

drug dealings virtually doubled the evidence against him. In this case, the evidence was not so overwhelming that we can say the hearsay testimony could not have influenced the verdict.

Although the conclusion just reached compels reversal, because the appellant may be retried we also will rule on his claim that the judge improperly defined "sale" in the instructions to the jury. The challenged instruction stated:

"To sell heroin means to knowingly and intentionally transfer possession or ownership of the heroin to another for money or other valuable consideration. For a person to make such a sale it is not necessary that he personally handle all of the details of the transaction. It is sufficient if the transaction is arranged by him and handled by persons under his direction and it is sufficient to constitute a sale if the person charged with sale is involved in the transaction by accepting, handling or counting the money and directing the delivery of the heroin. In other words, the person charged with the sale does not have to personally conduct all of the various elements of the delivery of the heroin and of the transfer of the money. It is sufficient if he participates therein to such an extent that it is obvious that he is a part of the making of the sale."

Appellant objected, and requested an instruction which would have required a finding that he physically delivered the heroin and directly received the $1,200 sale price.

He thus sought to defend on the grounds that he never personally handled the heroin during the sale, but instead completed the transaction through accomplices. Two Kansas cases, however, lead us to conclude that culpability does not turn on such a narrow point. In *State v. Woods,* 214 Kan. 739, 522 P.2d 967, our court rejected the argument that possession of marijuana is a lesser included offense under sale. Distinguishing possession and sale, the court explained that possession requires "some measure of control over some amount of the drug," while sale "is construed in a broad sense . . . without regard to questions of the passing of title, the existence of consideration or who possessed the drug sold." (p. 744.) The court went on to point out that "[u]nder the definitions contained in the Kansas act . . . ' "Sale" includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee.' (L. 1957, ch. 338, §1.)" (*Ibid.*)

Although the *Woods* decision was controlled by the "Uniform Narcotic Drug Act" (formerly found at K.S.A. 65-2501 *et seq.*) which was repealed in 1972 (L. 1972, ch. 234, §41), a subsequent

decision makes it clear that "sale" under the current "Uniform Controlled Substance Act" (K.S.A. 65-4101 *et seq.*) should be construed in the same way. *State v. Nix,* 215 Kan. 880, 529 P.2d 147. We conclude that the judge's instruction properly required the state to show only that the appellant participated in the sale, and that it was not necessary to show that he personally handled either the drug or the money.

The judgment is reversed and the case is remanded for a new trial.