No. 80-148

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

STANLEY DAVIS,

Defendant and Appellant.

Appeal from:  District Court of the Sixth Judicial District,
In and for the County of Park, the Honorable
Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Yardley and Yardley, Livingston, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Bruce Becker, County Attorney, Livingston, Montana

Submitted on Briefs:  August 28, 1980

Decided:  DEC 17 1980

Filed:  DEC 17 1980

_____
Thomas J. Kasermann                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Stanley Davis was charged in District Court, Sixth Judicial District, with four counts: (1) conspiracy to sell dangerous drugs, (2) attempted criminal sale of dangerous drugs, (3) criminal sale of dangerous drugs, and (4) attempted criminal possession of dangerous drugs. Following a jury trial, defendant was convicted of conspiracy to sell dangerous drugs and was sentenced to three years in prison.

At some time prior to August 8, 1979, Kenneth Huttinger (Informant) approached the Bozeman police about cooperating with them in apprehending James Amsk, who was allegedly selling drugs to Huttinger's girlfriend. A "buy" from Amsk was arranged by Informant to take place in Park County on August 8, 1979. Certain members of a police stakeout group observed the transaction from a prearranged lookout. They made no arrests and no warrants were issued at that time. Another person was present with Amsk at that transaction who was later identified as David Harper. The defendant was not present at this "buy."

During the August 8, 1979, meeting, Informant arranged with Amsk to make an additional purchase on the following day. The police were alerted to this activity and again staked out the park.

On August 9, 1979, defendant met Amsk in Livingston and drove with him, in Amsk's car, to Sacajawea Park. In the park they met Informant, and Amsk and Informant agreed to a "buy." Informant gave Amsk $465.00 and Amsk then agreed to return shortly with the drugs. At that time, Informant and defendant had no communication except for defendant's statement identifying himself to Informant. Amsk and defendant left the part together.

Informant gave a prearranged signal to the officers staking out the park and informed them that Amsk intended to return to the park shortly with the drugs. The officers returned

- 2 -

to their stakeout positions.

Fifteen or twenty minutes later, defendant returned alone to the park. He indicated to Informant that Informant was to meet Amsk at the A & W Root Beer Stand in order to take delivery of the drugs. Defendant left his car at the park and got into Informant's car and drove to the A & W with him. The A & W parking lot was very crowded so defendant instructed Informant to drive to the motel parking lot next door and to honk his horn at a car being driven by Amsk and Harper. Informant stopped his car in the lot and went to Harper's car to get the drugs. Amsk instructed Informant to give 1000 hits of "speed" (amphetamines) to defendant, for defendant to dispose of. Informant returned to the car and gave defendant the "speed" which defendant put in his boot. Informant and defendant returned to the park to get defendant's car.

Upon reaching the park, Informant and defendant both got out of Informant's car and walked over to defendant's car. At that time, Informant gave the signal to certain police on the stakeout who in turn signaled to officers Malone and Bowman to make the arrest. Officer Malone arrested defendant and conducted a pat-down search. Defendant was taken to the jail in Park County and searched, at which time the alleged amphetamines were found in defendant's boot. Tests proved the substances to be non-controlled substances.

Prior to trial, defendant moved to suppress all evidence taken from defendant's person following arrest, based on his allegation that the arrest was illegal. The motion to suppress was denied.

At the close of the State's case at trial, defendant moved to dismiss the first three counts. The motion was based on defendant's contention that the sale of dangerous drugs had been completed and the crimes consummated prior to any participation by defendant. This motion was denied.

The defendant raises several issues on appeal:

(1) Whether the officers had probable cause to arrest defendant, and whether the circumstances required his immediate arrest?

(2) Whether the defendant's motion to suppress should have been granted because the evidence was obtained after an illegal arrest?

(3) Whether the sale of dangerous drugs was completed prior to any participation by defendant Davis?

(4) Whether the court's denial of the motion to suppress and the motion to dismiss deprived defendant of a fair trial on the charge of conspiracy to sell dangerous drugs?

Officers Malone and Bowman of the Bozeman police force arrested defendant without a warrant. In order to make such an arrest, a police officer must satisfy the requirements of section 46-6-401, MCA. That statute provides in part:

> "Circumstances in which a peace officer may make an arrest. A peace officer may arrest a person when:
>
> " . . .
>
> "[4] he believes on reasonable grounds that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest."

Appellant contends that the arresting officers did not observe him committing any offense, nor did they have any knowledge that a crime had been committed by defendant. Additionally, appellant argues that even if probable cause did exist to believe a crime had been committed, there were no existing circumstances requiring his arrest without a warrant.

We find that the arrest was based on probable cause and was lawful. Thus, the evidence seized after the arrest was admissible at trial. The district judge properly denied the motion to suppress.

In Montana, "reasonable grounds" to arrest are synonymous with "probable cause" to arrest. State v. Fetters (1974), 165

Mont. 117, 122, 526 P.2d 122, 125. As this Court stated in State
v. Hamilton (1980), ____Mont.____, 605 P.2d 1121, 1125, 37
St.Rep. 70, 73:

> "'Probable cause to arrest without a warrant
> exists where the facts and circumstances within
> the officer's knowledge and of which he had
> reasonable trustworthy information are sufficient
> in themselves to warrant a man of reasonable
> caution in the belief that an offense has been
> or is being committed.'"

Admittedly, Officers Malone and Bowman, the arresting
officers, may not have had sufficient independent personal
knowledge of an offense to establish probable cause. From
Officer Malone's position in the stakeout, he was unable to
observe any of defendant's actions in the park. He was not pre-
sent at the A & W Root Beer Stand or at the motel parking lot. He
concedes that he did not personally observe defendant commit any
offense. Officer Bowman testified similarly.

The factual situation involved here is not an unusual one
in this type of case. Several officers were working in coopera-
tion with an informant in an ongoing undercover operation.
Officers were staked out in various positions around the scene of
the "buy" and communicated by means of radio and signals. No one
officer may have had sufficient knowledge to establish probable
cause, but if the information is considered collectively and is
evaluated on the basis of the information available to the law
enforcement officers as a group, it was sufficient to establish
probable cause. Numerous jurisdictions hold that

> "'. . .[P]robable cause is to be evaluated by the
> courts on the basis of the collective infor-
> mation of the police rather than that of only
> the officer who performs the act of arresting.'"
> State v. Shaw (1979), 3 Or.App. 346, 473 P.2d 159,
> 161.

See also Smith v. United States (D.C. Cir 1966), 358 F.2d 833,
835, cert.den. 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448;
People v. Saars (1978), 196 Colo. 294, 584 P.2d 622, 625; State
v. Miller (1975), 112 Ariz. 95, 537 P.2d 965, 967.

We find this view to be persuasive. Many investigations

and undercover operations could be needlessly frustrated if the participating officers were not able to rely on information provided by other officers working with them on a particular case.

Viewed in this way, we find that there were sufficient facts and circumstances within the officers' knowledge that they could reasonably believe that an offense was being or had been committed by defendant. Appellant argues that his mere presence at the scene of a crime does not establish probable cause for arrest. This is a correct statement of the law, State v.Hamilton, supra, ____Mont. at____, 605 P.2d at 1125, 37 St.Rep. at 73, but the evidence shows more than defendant's mere presence.

Steve Markle, investigator for the Gallatin County Attorney's office, knew that a drug transaction had occurred between Informant and Amsk on August 8, 1979 and that another transaction was scheduled for August 9, 1979. From his dealings with Informant, Steve Markle knew the Informant to be reliable and Markle personally viewed part of the transactions. On August 9, from his stakeout position in the Livingston Armory, Markle saw through his spotting scope that Informant had made contact with Amsk and another unidentified person (defendant) at the scheduled time and that Informant had transferred money to Amsk; Amsk and the unidentified person left the meeting place; the unidentified person returned; Informant and the unidentified person left together,and returned tò the scene together; and Informant gave a prearranged signal indicating the drug transaction had been completed. The information possessed by Markle was transmitted to Officers Bowman and Malone, the arresting officers, by radio.

Officers Bowman and Malone also knew that a drug transaction had occurred between Amsk, the informant and an unidentified person the previous day. They knew that Informant had delivered the money to Amsk and an unidentified person on August 9, 1979, and that Informant had given the prearranged signal to Markle that the drug transaction had been completed. They testified to

their belief that Informant would not have signaled to Markle, who alerted them in turn, unless the participants in the crime were present and the transaction complete.

In sum, the arresting officers had sufficient trustworthy information and knowledge to constitute probable cause that an offense had been committed by defendant. But appellant argues that there were no existing circumstances requiring defendant's immediate arrest. Section 46-6-401(4), MCA. State v. Lenon (1977), 174 Mont. 270-271, 264, 570 P.2d 901, 905. He asserts that he was not attempting to flee, he was not armed, and the park was surrounded by law enforcement officials. The officers were in radio contact with the law enforcement facility and could have obtained a warrant.

Although there is a strong preference for officers to obtain a warrant, Beck v. Ohio (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, we find that the circumstances here were sufficient to allow a warrantless arrest. This Court has not specifically defined the "existing circumstances" which permit an immediate arrest, but we have in previous cases discussed "exceptional circumstances" allowing police to enter a residence without a warrant in order to search and arrest. In State v. Means (1978), ____Mont.____, 581 P.2d 406, 35 St.Rep. 673, this Court held that police acted properly under the circumstances in not obtaining a warrant. Citing Johnson v. United States (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed 436, we noted certain instances in which there could be a need to proceed without a warrant:

> "'There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with. But this is not such a case. No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. . . No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction. . .'"

- 7 -

State v. Means, supra, ____Mont. at ____, 581 P.2d at 410-411, 35 St.Rep. at 679.

In this case, Officer Malone testified that despite the stakeout he believed that defendant, who had come to the park in his car, was likely to flee. Additionally, the police were justified in believing that evidence of the buy, which could easily have been destroyed or disposed of, might be found on defendant because he was present at delivery. Based on these circumstances, the officers were reasonable in their belief that an immediate arrest was necessary, as is required in State v. Bennett (1972), 158 Mont. 496, 504, 493 P.2d 1077, 1081. Because we find that the arrest was lawful, we hold that the alleged amphetamines seized from the defendant following the arrest were properly admitted at trial.

Appellant next contends that the district judge erred in not dismissing count one, conspiracy to sell dangerous drugs; count two, attempt to sell dangerous drugs; and count three, sale of dangerous drugs. Appellant's motion was based on his theory that because he did not participate in the August 9 Amsk-Informant agreement to buy drugs, or the accompanying exchange of money, that any criminal offense was completed prior to the time that defendant participated in the transaction.

In presenting this argument to the Court, defendant is assuming that for the purposes of conviction for sale of dangerous drugs, the act of agreement to buy, and the exchange of money, constitute the entire sale transaction. We find this view of "criminal sale" to be too restrictive. The statute provides in part:

> "(1) A person commits the offense of criminal sale of dangerous drugs if he sells, barters, exchanges, or gives away, or offers to sell, barter, exchange, or give away . . ." Section 45-9-101, MCA.

Several jurisdictions have considered the definition of "sell" as it appears in statutes similar to section 45-9-101, MCA. The Supreme Court of New Hampshire in State v. Stone

- 8 -

(1974), 114 N.H. 114, 316 A.2d 196, 197, noted that in criminal statutes, "sell" may have a broader meaning than it does in statutes governing commercial transactions, where "sell" is commonly defined as "'the passing of title from the seller to the buyer for a price.'" In order to carry out the purposes of the drug statutes, that Court found that "proof that the defendant made no profit or received no other consideration from this transaction, or proof that he was simply a procuring agent for Perria would not prevent the defendant's action from constituting a sale under [New Hampshire law.]" The act of "bringing about the transfer of the LSD to [an undercover agent]" allowed the jury to find defendant guilty of the sale of dangerous drugs. State v. Stone, supra, 316 A.2d at 197-198.

The Supreme Court of Kansas has determined that in a conviction for criminal sale, it is immaterial that defendant does not possess legal title, or that defendant receives no consideration from a transaction in which he participates. See State v. Nix (1974), 215 Kan. 880, 529 P.2d 147, 151. In State v. Collazo (1977), 1 Kan.App.2d 654, 574 P.2d 214, the Court of Appeals of Kansas approved the jury instruction in a case charging criminal sale:

> "To sell heroin means to knowingly and intentionally transfer possession or ownership of the heroin to another for money or other valuable consideration. For a person to make such a sale it is not necessary that he personally handle all of the details of the transaction. It is sufficient if the transaction is arranged by him and handled by persons under his direction and it is sufficient to constitute a sale if the person charged with sale is involved in the transaction by accepting, handling, or counting the money and directing the delivery of the heroin. In other words, the person charged with the sale does not have to personally conduct all of the various elements of the delivery of the heroin and of the transfer of the money. It is sufficient if he participates therein to such an extent that it is obvious that he is a part of the making of the sale." State v. Collazo, supra, 574 P.2d at 216.

> See also Hammonds v. State (Tex. 1958), 316 S.W.2d 423, 425. State v. Thomas (1975), 166 Mont. 265, 269, 532 P.2d 405, 407; Annot., 93 ALR2d 1008.

- 9 -

We approve this view taken by other courts and conclude that the Montana legislature did not intend that a sale should be complete merely upon the exchange of money. Delivery appears to be an integral part of the sale of drugs, particularly when we consider that the statutes are aimed primarily at stopping the transfer and distribution of dangerous drugs. Consequently, we find that the trial judge properly determined that the sale did not necessarily conclude with the payment of money, and properly denied appellant's motion to dismiss.

Appellant's last contention is that the judge's denial of the motion to suppress and the motion to dismiss counts two and three denied defendant a fair trial on the charge of conspiracy to sell dangerous drugs. Our determination that the trial judge properly denied defendant's motions precludes a finding that defendant was denied a fair trial on this basis. The evidence found on defendant's person was properly before the jury, as was the testimony concerning defendant's participation in the sale of August 9. The jury found this evidence sufficient to prove beyond a reasonable doubt that the defendant agreed with Amsk and David Harper to sell dangerous drugs, and affirmatively participated in an ongoing conspiracy.

We affirm the defendant's conviction for conspiracy to sell dangerous drugs.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 10 -