No. 67,829

STATE OF KANSAS, *Appellee*, v. FRIO JOHNSON, *Appellant*.

(853 P.2d 34)

Opinion filed May 28, 1993.

*Stephen Douglas Bonney*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals his convictions of two counts of aggravated robbery and three counts of kidnapping. Defendant claims (1) his identification, the evidence seized in the search of a vehicle, and his confession should have been suppressed; and (2) the trial court erred (a) when it struck a potential juror from the panel; (b) in failing to inquire whether the prosecution had threatened a potential witness for the defense with prosecution; (c) in admitting a hearsay statement indicating he had been identified as the robber; (d) in refusing to declare a mistrial after the prosecution violated an order precluding evidence regarding defendant's prior criminal record; (e) in refusing to give defendant's requested instruction regarding the unavailability of a potential witness; and (f) in instructing the jury.

At approximately 7:20 a.m. on January 19, 1991, Eric Stephens, a meat cutter, arrived at the Farmers' Market in Wichita to open for the day's business. As Stephens, the first employee to arrive, was opening the back door, a black man wearing nylon hose over

his face and an old greenish-looking parka put a gun to his back. The man told Stephens to turn the store's alarm off and ordered him to open the safe. Stephens stated he could not open the safe but another employee who was arriving in 10 or 15 minutes could. After obtaining the key to the back door from Stephens, the man ordered him inside the walk-in freezer.

At approximately 7:30 a.m., John M. Yaussi, the assistant manager, arrived at the store with his daughter, Maria. Yaussi observed a light-colored car parked behind the market with its engine running, and noted that the driver was bent over. Yaussi noticed Stephens had already arrived and had turned off the alarm to the doors. When Yaussi and Maria entered the store, he turned off the alarm to the safe. As they walked towards the front of the store, they heard the sound of a person running up behind them. They turned and saw a black man in a hooded parka with a nylon stocking over his face pointing a gun at them. Yaussi was ordered to open the safe. The man produced a grey bag and told him to put the money in the bag. Yaussi and Maria were ordered into the walk-in freezer. After a few minutes, Yaussi left the freezer and called 911 to report the robbery.

At 7:26 a.m., Officer Gary Smith of the Wichita Police Department responded to a radio dispatch concerning a suspicious cream-colored Ford Thunderbird parked behind the Farmer's Market with its engine running. When the officer arrived at the market, he observed the cream-colored Thunderbird pulling away from the curb. The car's trunk lid was ajar and bouncing up and down. The officer followed the slowly moving car, which was being driven with extreme caution. When the officer pulled up beside the car, the driver, a black woman, would not look towards him.

Officer Smith activated his emergency lights and stopped the car. The driver, Linda Parish, immediately exited the car and approached the officer. Her action caused Smith to become suspicious, and he concluded there was something in the vehicle she did not want him to see. After Officer Smith explained why he had stopped her, Parish indicated her young daughter was in the front seat of the car and a friend was in the back seat. The officer approached the car, looked in the back seat, and observed a black male lying down with his eyes open and "nervously"

looking up at him. There was a grey hooded coat lying across the man's legs. Because he feared for his safety, the officer drew his service revolver and ordered the man out of the car. He told the man to face the car and place his hands on the roof, so the officer could search him for weapons.

After Smith had checked the man for weapons, he received a dispatch over his portable police radio of an armed robbery at the Farmer's Market. Upon hearing the dispatch, the man ran. Rather than pursue the man, the officer stayed with the car and called back-up officers to the area. Two hours later, through a mug shot, Officer Smith was able to identify the man who ran away as Frio Johnson. Parish, the driver of the car, had also identified the fleeing person as Frio Johnson. None of the victims was able to identify the robber.

From the car, police recovered a black .38 caliber handgun, a knee-high nylon stocking, a grey hooded parka, and a grey bag containing a large amount of cash. The key taken from Stephens was found in the pocket of the parka. Although the crime scene investigators obtained fingerprints from the market and the car, none of them matched those of Johnson. On January 23, 1991, a warrant was issued charging Johnson with two counts of aggravated robbery, Class B felonies, contrary to K.S.A. 21-3427, and three counts of kidnapping, Class B felonies, contrary to K.S.A. 21-3420.

On May 2, 1991, the defendant, after being arrested, was interviewed by Officer Michael Hennessy. Officer Hennessy briefly informed Johnson of the circumstances surrounding his arrest. The defendant immediately denied any involvement in the robbery of the market. Johnson later waived his Fifth Amendment right and confessed to robbing the store.

At trial, Johnson recanted his confession. He stated that a person by the name of Don McPherson came by his house and told him about robbing the market. Johnson said McPherson threatened to hurt his daughter if he told anybody. Johnson testified he was no longer worried about his daughter's safety because "nobody knows where she lives at now." Johnson explained that he left his parka at Linda Parish's house seven or eight months prior to trial and did not have it at the time of the crime.

The jury found Johnson guilty of all charges. Johnson was sentenced to 15 years to life on each count of aggravated robbery and 10 years to life on each count of kidnapping. The sentences for aggravated robbery were ordered to run concurrently with each other. The sentences for kidnapping were also ordered to run concurrently with each other but consecutive to the sentences for aggravated robbery. Johnson appeals his convictions.

Twenty-three separate rights are noted in the first eight Amendments to the Constitution of the United States, twelve of which concern criminal procedure. The Fourth Amendment guarantees the right to be secure against unreasonable searches and seizures and prohibits the issuance of arrest warrants without probable cause. The Fifth Amendment prohibits placing a person in jeopardy by compelling a person to be a witness against himself or herself. The Sixth Amendment lists several rights applicable to criminal prosecutions such as the right to counsel, the right to a speedy and fair trial, and the right to confront opposing witnesses. The Eighth Amendment prohibits excessive bail. Kansas Judges Manual, p. 4-1. Defendant claims that his rights under the Fourth, Fifth, and Sixth Amendments to the Constitution were violated.

## SUPPRESSION OF EVIDENCE
## SEARCH OF THE VEHICLE

Johnson contends his rights under the Fourth Amendment and K.S.A. 1992 Supp. 22-2402(1) were violated when Officer Smith stopped the car in which he was a passenger without having a reasonable and articulable suspicion that a crime had been committed. He argues that the stop of the Parish vehicle was not justified because: (1) Although the stop was based on an anonymous citizen's call about a "suspicious" vehicle, there was nothing to indicate to the officer that Parish's car was suspicious; (2) at the time of the stop, Officer Smith had no knowledge that any crime had been committed; and (3) the circumstances that Parish was driving slowly with the car trunk lid unlatched and did not look at Officer Smith when he pulled up next to her car did not provide a reasonable suspicion for the officer to stop the vehicle. Johnson concludes because the stop of the vehicle was illegal, the evidence seized in the subsequent search of the vehicle and

the officer's later identification of Johnson should have been suppressed.

Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed, or is about to commit a crime and may demand the name and address of such suspect and an explanation of such suspect's actions. K.S.A. 1992 Supp. 22-2402(1). K.S.A. 1992 Supp. 22-2402 is a codification of the United States Supreme Court decision in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In *Terry*, the Court held an officer may stop and frisk an individual even though the officer does not have probable cause to believe a crime has been or is being committed if the officer is able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21. See *State v. McKeown*, 249 Kan. 506, 508-09, 819 P.2d 644 (1991).

The stop of a vehicle, under the circumstances set forth in K.S.A. 1992 Supp. 22-2402 and *Terry*, is different than merely approaching an individual in a public place. Such a stop always constitutes a seizure. Therefore, to stop a moving vehicle an officer must have articulable facts sufficient to constitute reasonable suspicion. See *Delaware v. Prouse*, 440 U.S. 648, 661-63, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). To stop a vehicle to investigate circumstances which provoke suspicion, an officer must be aware of "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the vehicle contains individuals involved in criminal activity. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975). See *State v. McKeown*, 249 Kan. at 510.

At the suppression hearing, Officer Smith testified he received information, prompted by a call from an anonymous caller, over his police radio at approximately 7:26 a.m., that a suspicious cream-colored Thunderbird was parked behind a store with its engine running. It was unknown whether the car was occupied. Officer Smith knew no stores in the area were open at that hour and was aware of a problem with burglaries, larcenies, and auto thefts in the area. As he reached the location of the store, the

car pulled slowly away with its trunk lid ajar and bouncing. Officer Smith testified this bothered him because it seemed as if somebody had just thrown something into the trunk or somebody was in there. When the car pulled away, it drove at a speed of approximately 5 to 10 miles an hour as if to not attract attention. Officer Smith thought the driver might have been having car trouble. He also thought it was strange the driver would not look at him when he pulled up beside the car. Looking at the totality of the circumstances, Officer Smith acted reasonably in stopping the vehicle.

"An appellate court will uphold a trial court's suppression of evidence if that ruling is supported by substantial competent evidence. *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979)." *State v. Garcia*, 250 Kan. 310, 318, 827 P.2d 727 (1992). Here, the officer was aware of sufficient articulable facts which created a rational inference that the individual in the vehicle was involved in criminal activity. The stop of the car was legal. Johnson's contention that the evidence obtained from the search of the car and Officer Smith's identification of him was inadmissible as fruit of the poisonous tree because the stop of the car was illegal is without merit.

## THE CONFESSION

At the hearing on the motion to suppress Johnson's confession, Detective Hennessy testified that, on May 2, 1991, when he met with Johnson in a standard police department interview room, Johnson's leg was shackled to the table, but his arm was free. Prior to meeting with Johnson, Hennessy had reviewed Johnson's past criminal arrest record and learned Johnson had been arrested 21 times since 1984.

Hennessy further testified that upon arriving in the interview room, he identified himself and explained to Johnson why there was a warrant issued for his arrest. He explained that at the time other officers were investigating the robbery, the female in the car, who was identified as Johnson's girlfriend or his wife, had identified him (Johnson) as being in the car and as the person who ran from the officer. Hennessy told the defendant that Officer Smith, who had made the initial car stop, had later through photographs identified Johnson as the person who had run from

the car. Hennessy told Johnson he was suspected of being the robber and in his opinion there was a good case against Johnson. Upon questioning by the prosecutor, Hennessy explained that it was his policy to inform anyone he wished to question why that person was being detained prior to advising the person of his or her rights. According to Hennessy, before he could inform Johnson of his rights, Johnson immediately said he had been out of town and made it very clear that he was not involved in or had any knowledge of the robbery. Hennessy then told Johnson that if this was true there was no sense in continuing the conversation and started to leave.

Hennessy testified that as he got up from his chair, Johnson asked what would happen to him. Hennessy testified that he perceived Johnson was asking what would happen to him (Johnson) if he was convicted of the charges. Hennessy explained that he could not tell Johnson what would happen; the only thing he could do for him was "to go to the DA and tell the DA if the person is cooperating or not, cooperating in the investigation such as this." Johnson then asked what kind of a deal Hennessy could make for him with the district attorney. Hennessy said he could not make any deals and once again stated that he could only go to the district attorney and inform the district attorney whether Johnson was cooperating. Johnson motioned Hennessy back to the table, told him to sit down, and said, "Let's talk." At that point, Hennessy advised Johnson of his legal rights. Johnson subsequently confessed to the robbery.

Johnson contends the initial conversation, prior to his confession, between him and the detective was a custodial interrogation which required a warning as to his constitutional rights. He argues that, because he was not advised of his rights prior to the initial conversation with the officer, his confession should have been suppressed. Johnson does not claim that Detective Hennessy engaged in any questioning of the defendant prior to informing the defendant of his rights. Johnson asserts that by describing the strength of the State's case against him and failing to advise Johnson of his rights prior to Johnson's statements denying guilt, Hennessy was engaging in the well-established psychological ploy of stating facts that point to defendant's guilt in order to elicit a confession. He argues that such a ploy is clearly an interrogation

under *Arizona v. Mauro*, 481 U.S. 520, 526-27, 95 L. Ed. 2d 458, 107 S. Ct. 1931 (1987).

The State contends that Johnson cannot argue that he was overcome by psychological pressure because the defendant was not unfamiliar with the *Miranda* warnings or the police interrogation process. Johnson had been arrested 21 times since 1984. The State asserts there is no evidence that the confession was not a product of the defendant's free and independent will. It states the record clearly shows that Hennessy was merely explaining the reason for the defendant's arrest prior to the interrogation process when the defendant interrupted the officer and denied the allegation. The State claims that statement by the defendant was of the defendant's own initiative. The State points out that no incriminating statements were made by Johnson until after the *Miranda* warnings had been given.

"In the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), the United States Supreme Court held the prosecution cannot use statements, whether inculpatory or exculpatory, stemming from custodial interrogation, unless it proves that procedural safeguards were used to secure defendant's privilege against self-incrimination. These safeguards included informing the person in custody, prior to interrogation, of his Fifth Amendment rights to remain silent, to consult with an attorney, and to have an attorney present during interrogation. 384 U.S. at 445."

*State v. Leroy*, 15 Kan. App. 2d 68, 70, 803 P.2d 577 (1990). Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Fritschen*, 247 Kan. 592, 598, 802 P.2d 558 (1990).

In determining whether a confession is voluntary, a court is to look at the totality of the circumstances. The burden of proving that a confession or admission is admissible shall be on the prosecution, and the required proof is by a preponderance of the evidence. Factors bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement

is whether the statement was the product of the free and independent will of the accused. *State v. Price*, 247 Kan. 100, Syl. ¶ 1, 795 P.2d 57 (1990).

When a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely and voluntarily given, and admits the statement into evidence at the trial, this court accepts that determination if it is supported by substantial competent evidence. *State v. Perkins*, 248 Kan. 760, 764, 811 P.2d 1142 (1991). See *State v. William*, 248 Kan. 389, 409, 807 P.2d 1292, *cert. denied* 116 L. Ed. 2d 89 (1991). Here, after reviewing the duration and manner of the interrogation; the accused's age, intellect, and background; and the fairness of the officer in conducting the interrogation, the record shows there was substantial competent evidence to support the decision of the trial court.

Johnson also argues his confession should have been suppressed because the detective's impermissible implied promise that if Johnson cooperated the officer would inform the district attorney of the cooperation and Johnson would receive a benefit, made defendant's confession involuntary.

In *State v. Harwick*, 220 Kan. 572, 576, 552 P.2d 987 (1976), this court held that a mere offer by the officer who interviewed the defendant to talk to the district attorney does not make a confession involuntary. Johnson claims *Harwick* does not apply because Hennessy had interrogated Johnson without informing him of his rights prior to implying that Johnson would receive a benefit for cooperating. Johnson does not explain how this makes *Harwick* inapplicable.

A review of the record shows that the detective did not bargain with or promise the defendant anything by implication or otherwise.

## CHALLENGE FOR CAUSE

Johnson next contends the trial court erred when it struck Julie Nguyen, a potential juror, from the panel for cause at the State's request. He argues that there was no evidence upon which the court could reasonably determine that Nguyen's state of mind would cause her to act impartially or prejudicially.

During voir dire by the State, Julie Nguyen indicated that some of her friends in the Vietnamese community had been in trouble with the law and she had heard they were treated unfairly. Although she said she could be fair to both sides and she understood she could not take her personal experiences into account if selected for the jury, Nguyen acknowledged her friends' experiences might cause her a problem as a juror. On four occasions she indicated this might be a problem for her. She could not articulate how it would affect her as a juror. The State moved to have her excused for cause. Over the defendant's objection, the court excused the juror.

A juror may be challenged for cause when the juror's state of mind with reference to the case or any of the parties is such that the court determines there is doubt that the juror can act impartially and without prejudice to the substantial rights of any party. K.S.A. 22-3410(2)(i). Challenges for cause are heard by the trial judge and are decided by the judge's use of discretion.

The trial judge is in a better position than an appellate court to view the demeanor of prospective jurors as they are questioned. A trial judge's ruling on a challenge for cause will not be disturbed unless it is clearly erroneous or an abuse of discretion is shown. *State v. Dixon*, 248 Kan. 776, 788-89, 811 P.2d 1153 (1991). The record shows the district court's ruling was neither clearly erroneous nor an abuse of discretion.

## THREATENING A POTENTIAL WITNESS

During the trial, the prosecutor and defense counsel requested a hearing out of the presence of the jury. The prosecutor informed the judge he would not call Parish as a witness because she would recant her previous statement to the police and now testify she drove another person, not Johnson, to the store and knew that person intended to rob the store and, by so testifying, would inculpate herself in the crimes. Defense counsel informed the judge she planned to call Parish as a witness and had talked with Parish during the lunch hour and that Parish told her that Detective Hennessy had threatened to charge her with aiding and abetting a robbery "if she testifies today the way she told the detective she would testify." Defense counsel claimed that although this constituted prosecutorial misconduct, Parish never-

theless wanted to testify. The prosecutor responded that he did not threaten to file charges against Parish and never discussed with the witness the potential for charges, and that to his knowledge, Detective Hennessy had not threatened the witness with prosecution.

The judge stated that there was no evidence of prosecutorial misconduct or that, if it occurred, it had affected the defendant's right to a fair trial. Later in the proceedings, the court appointed an attorney for Parish. After a discussion with her attorney, Parish elected to invoke her privilege against self-incrimination and did not testify.

A threat or implication of possible prosecution "calculated to transform . . . a willing witness [in]to one who would refuse to testify" amounts to prosecutorial misconduct. *United States v. Smith*, 478 F.2d 976, 979 (D.C. Cir. 1973). Johnson contends that the threats clearly constituted prosecutorial misconduct and denied him a fair trial. He argues the trial court was wrong in brushing this issue aside without making an inquiry.

Johnson's appellate counsel fails to take into account the fact that defendant's counsel at trial (1) did not request a hearing or make any further inquiry of the officer's alleged statement, (2) indicated that Parish was willing to testify in spite of the alleged threat to prosecute, and (3) when the court asked defense counsel, "Is there any action you would suggest that I take?" defense counsel responded:

"Your Honor, I am in a difficult position because I would like her to be a witness. I think it is necessary for her to be a witness for our case. However, if she decided not to testify, to take the Fifth Amendment, she would not be available as a witness. I don't know if the District Attorney is planning on putting in any of her prior statements in this case. I think it would be proper probably for the Court to appoint her an attorney to advise her. I don't think she really understands what the possibilities are, what is going on even. I didn't discuss it with her very much because like I said it is really not my place to."

The State notes that the trial court heard arguments by both the prosecution and the defense on this point. It contends that because of the judge's inquiry and the fact that Parish invoked her privilege against self-incrimination, the defendant has not

shown prejudicial error or that he was deprived of a fundamentally fair trial.

Defense counsel did not provide evidence or an affidavit to show that there was a threat to prosecute the witness or if there was a threat that the threat in any way changed the outcome of the trial. Defense counsel merely concludes that a threat was made by the officer. Because defense counsel failed to further inquire into the matter or request the trial judge to do so, or to provide any authority showing an evidentiary hearing was required, the issue is without merit.

## OUT-OF-COURT STATEMENT

On direct examination, the prosecutor asked Detective Hennessy what he told the defendant at the beginning of the interview. After a number of questions along that line, the prosecutor asked:

"Q. And did you tell him [Johnson] anything else about the case at that time?

"A. I advised him that he has been identified by an officer who had him stopped shortly after the robbery as the same person that he pulled out of the car that was involved in the robbery and had ran from the officer.

"Q. Did you tell him anything else?

"A. And I also advised him that the person who had been identified to me as his girlfriend identified him."

At that point defense counsel objected on grounds the statement was hearsay. The court ruled that it was not hearsay because the statement was not offered to prove the truth of the matter stated but to show what the officer said to the defendant about the case and why he wanted to talk with him. On appeal, Johnson contends that the statement was inadmissible hearsay asserting the defendant's guilt. Johnson, without explanation, cites *State v. Collazo*, 1 Kan. App. 2d 654, 655, 574 P.2d 214 (1977), as authority and then concludes the trial court erred in overruling the hearsay objection.

In *Collazo*, the State's case rested almost entirely on testimony of an undercover narcotics agent who had met the defendant through a third party. The testimony of the agent concerned conversations with the third party, who described Collazo as a known and large scale drug dealer. The *Collazo* court held the

statements admitted as evidence were so closely related to the defendant's guilt that the agent's presentation of the out-of-court statement to the jury not only explained the agent's interest in the defendant but was also testimony as to defendant's being a drug dealer. The *Collazo* court noted an out-of-court declaration by a third party to a police officer which is offered at trial merely to explain the officer's conduct in the investigation of a crime, although hearsay, is usually admissible because it is not offered for the truth of the matter stated. However, when such declaration also directly incriminates the defendant, it is inadmissible unless it falls within one or more of the hearsay exceptions of 60-460. The statements to the officer were found inadmissible as they did not fall within one of the hearsay exceptions. 1 Kan. App. 2d at 655-56.

The State argues that the facts of *Collazo* are distinguishable because the identification by Parish was only a small part of the evidence connecting the defendant to the crime. According to the State, that evidence revealed what led the police to the defendant, but it did not establish the defendant's guilt. The State notes Parish's statements did not detail the robbery but merely identified Johnson as being in the car. The State contends the detective's comment was offered to explain why the defendant had been arrested and what occurred prior to his confession and was not offered to prove that Parish had identified the defendant as the robber.

A situation similar to this case occurred in *State v. Thompson*, 221 Kan. 176, 179, 558 P.2d 93 (1976), where an officer testified about information given him by a radio dispatch. There, we noted that radio dispatch testimony was admitted merely to explain a sequence of events leading to action by an officer and not to prove the truth of the matter asserted in the dispatch, *i.e.*, to establish the identity and guilt of the defendant.

Here, the question by the prosecution and answer by the witness was to inform the jury what the agent had told Johnson at the beginning of the interview in order to establish the background and foundation testimony for what occurred later in the conversation. The statement was not closely related to defendant's guilt, as were the statements in *Collazo*.

## MOTION IN LIMINE

Defendant filed a motion in limine requesting that the State be prohibited from making any reference during trial to his prior criminal record. The court granted the motion "by consent of both parties."

Defendant contends the order was violated in the direct examination of Detective Hennessy during the following exchange:

"Q. Before you talked with him did you observe him talk with anybody else?

"A. Yes, I observed him come in from the front entrance. He was walked around to our section. He was placed into an interview room. While doing so—

MS. REED: Objection, your Honor. I don't think this is relevant. It is certainly inadmissible.

MR. PUNTCH: It goes to the defendant's state of mind at the time, your Honor. It is relevant.

THE COURT: He may answer.

"Q. Go ahead.

"A. While he was being placed in an interview room he became re-acquainted with another detective by the name of Detective Mervosh who he has known for several years.

"Q. What was his mood? How was he acting?

MS. REED: Objection, your Honor. May we approach the bench?"

Outside the hearing of the jury, defense counsel argued that the comment revealed to the jury that the defendant had prior arrests and had previously talked to detectives. She then requested a mistrial, asserting the State had violated the motion in limine.

The State responded to the trial judge that there were numerous individuals in the community who know police officers, and that fact does not indicate those individuals have a criminal record. The prosecutor argued that there was no intimation that any prior contact the defendant had with Detective Mervosh was in a professional capacity. The prosecutor claimed that testimony was necessary because Johnson, in an effort to suppress his confession, intended to claim that he was forced by extreme pressure to falsely state he was the person who committed the crime because of the threat of harm to his daughter. The prosecutor pointed out the fact that Johnson was laughing and joking with the other officers before he was interviewed by Detective Hennessy nullified Johnson's possible claim of duress. The court sustained the defendant's objection but denied the motion for

mistrial. The court advised defense counsel that if Johnson took the stand and testified he was coerced by the officers, the challenged evidence would become admissible. The court then instructed the jury to disregard the last question and answer.

Defendant contends the court's refusal to grant a mistrial was a clear abuse of discretion because the testimony (1) "definitely indicated that defendant had a prior criminal record" and (2) was highly prejudicial because the judge admitted evidence of Johnson's conduct with officers prior to being questioned and then subsequently failed to investigate the prosecution's threats to Parish. Defendant fails to offer an explanation regarding the second part of his contention. As to the first part, there was nothing in the detective's statement that Johnson knew and joked with other police officers which would indicate Johnson had a prior criminal record.

The decision to declare a mistrial lies within the sound discretion of the trial court. The defendant has the burden of showing substantial prejudice before an appellate court will find the trial court abused its discretion. *State v. Grissom*, 251 Kan. 851, Syl. ¶ 37, 840 P.2d 1142 (1992). Declaration of a mistrial is a matter entrusted to the trial court's discretion, and that decision will not be disturbed on appeal absent a clear showing of abuse of discretion. *State v. Mayberry*, 248 Kan. 369, 380, 807 P.2d 86 (1991). Here, there has been no clear showing of an abuse of discretion.

## DEFENDANT'S REQUESTED INSTRUCTION

Because Parish had exercised her Fifth Amendment right not to testify, she was not available as a witness. Defendant requested the trial court to instruct the jury that Linda Parish was unavailable as a witness for either party—without informing the jury that she had exercised her Fifth Amendment right not to testify. The court refused to give such an instruction because it would inappropriately focus the jury's attention on that evidence and cause the jury to speculate why the witness failed to testify.

On appeal, defendant contends that the trial court abused its discretion in not giving the requested instruction because "such an instruction was critical given the threats that may have caused Ms. Parish not to testify and the trial court's decision to admit

[her] hearsay statement identifying defendant as the robber." No reason or explanation for this claim is provided. In addition, defense counsel failed to argue this claim to the trial court. A defendant cannot raise points on appeal which were not presented to the trial court. *State v. Crawford,* 246 Kan. 231, 234, 787 P.2d 1180 (1990).

## ERROR IN INSTRUCTING THE JURY

Jury Instruction No. 10 stated:

"Insofar as the jury is concerned, you may consider as evidence whatever is admitted in the trial as part of the record, whether it be the testimony of witnesses or an article or document marked as an exhibit, or other matter admitted."

Defense counsel objected to the instruction, contending that the judge's instruction failed to follow PIK Crim. 2d 51.04, which provides:

"In your fact finding you should consider and weigh everything admitted into evidence. This includes testimony of witnesses, admissions or stipulations of the parties, and any admitted exhibits. You must disregard any testimony or exhibit which I did not admit into evidence."

Defendant asserts that when the court specifically instructed the jury to disregard the testimony of Detective Hennessy, the judge implied Johnson had a criminal record. Under the circumstances, he contends, it was imperative that the last sentence of the PIK instruction be given the jury to insure it would not consider inadmissible evidence.

When defense counsel objected to instruction No. 10, she made no mention of Hennessy's comment about Johnson's conversation with Detective Mervosh. That particular assertion is now presented for the first time. No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds for the objection, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). Under the circumstances, in considering the instruction, we use the clearly erroneous standard to determine if the defendant is entitled to a new trial because of the instruction.

There is no indication why the trial judge did not use the applicable PIK instruction. Insofar as this particular objection is

concerned, the substance of the PIK instruction was made known to the jury through instruction No. 10. An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility that the jury would have returned a different verdict. *State v. Stafford*, 223 Kan. 62, Syl. ¶ 2, 573 P.2d 970 (1977). The instruction was not clearly erroneous. Defendant has not shown the court's failure to use PIK Crim. 2d 51.04 was clearly erroneous.

Defendant also contends that the instruction incorrectly indicated that the jury could consider as evidence an article or document marked as an exhibit. Defendant implies the instruction as given suggested that anything marked as exhibits could be considered as evidence even if the exhibits were not admitted into evidence by the judge.

The defendant either misreads or fails to understand the instruction. The instruction clearly indicates the jury "may consider as evidence whatever is admitted in the trial . . . whether it be . . . an article or document marked as an exhibit, or other matter admitted."

Affirmed.