NOT DESIGNATED FOR PUBLICATION

No. 123,916

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRYAN JAMES ROBINSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Marion District Court; MICHAEL F. POWERS, judge. Opinion filed April 15, 2022.
Affirmed.

*Barry A. Clark*, of Clark & Platt, Chtd., of Manhattan, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN, J., and RICHARD B. WALKER, S.J.

PER CURIAM: Bryan James Robinson filed a motion to suppress, arguing his traffic stop was not supported by reasonable suspicion. The district court denied the motion, and, after a bench trial on stipulated facts, Robinson was convicted for driving under the influence (DUI). Robinson now appeals the denial of his motion to suppress. After a review of the record, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Around 3:30 p.m. on March 31, 2020, Mike Blaze, in Florence, Kansas, called 911 about a suspicious silver pickup truck. The truck's driver had dogs running loose, and the driver had scared one of Blaze's neighbors. Blaze said the driver "took off like a bat out of hell" when approached and "the way he was driving, most people don't drive that fast." Blaze described the driver, the truck, and provided the truck's license plate number. Blaze reported the truck was driving east on Highway 50.

The dispatcher informed Marion County Deputy Sheriff Derek Fetrow of the report. Fetrow found the truck driving east on Highway 50, traveling 30 miles per hour in a 65-mile-per-hour zone. Fetrow considered the speed to be a safety issue and stopped the truck. The stop turned into a DUI investigation. The driver, Robinson, was arrested and charged with a DUI.

Robinson moved to suppress the evidence from the stop, arguing Fetrow's stop was unlawful. The district court took judicial notice of its prior cases involving accidents on Highway 50, describing Robinson driving 30 miles per hour in a 65-mile-per-hour zone as inherently dangerous. The district court found the stop was valid based on the 911 call and Robinson's slow speed and denied the motion to suppress.

Robinson moved for reconsideration. At the hearing on the motion to reconsider, the district court explained it believed that Fetrow had an obligation to investigate the report. The district court also explained that if it was not a valid investigatory stop, then there was enough to justify a public safety stop. The district court did note that Fetrow did not observe any traffic violation. The district court denied the motion to reconsider.

Robinson proceeded to a bench trial on stipulated facts. The district court found him guilty of DUI and sentenced him to jail but suspended the sentence to probation after Robinson served 90 days in jail.

Robinson timely appeals.

## DID THE DISTRICT COURT ERR IN DENYING ROBINSON'S MOTION TO SUPPRESS?

Robinson makes two arguments to support his claim that the district court erred when it denied his motion to suppress. First, Robinson asserts the information in the 911 call did not establish reasonable suspicion warranting the traffic stop. Second, Robinson argues the district court was wrong to find the stop was also justified under the public safety stop rationale because public safety stops cannot be conducted when the officer also has an investigatory purpose.

The State argues the 911 call provided Fetrow with enough information to reasonably believe Robinson had committed a crime and that a traffic stop can have both a public safety and investigatory purpose.

*Standard of review*

When a motion to suppress challenges a search and seizure, the burden is on the State to prove its lawfulness. We review the district court's factual findings to determine whether they are supported by substantial competent evidence and review the district court's legal conclusions de novo. *State v. Arrizabalaga*, 313 Kan. 323, 332, 485 P.3d 634 (2021). "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.' [Citation omitted.]" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). We give great deference to the factual findings of the district court and do not reweigh evidence, assess witness credibility, or resolve

3

evidentiary conflicts. 301 Kan. at 461. When there is no dispute as to the underlying material facts, suppression is solely a legal question. *Arrizabalaga*, 313 Kan. at 332.

*Reasonable suspicion existed to support an investigatory stop*

Under one exception to the warrant requirement in the Fourth Amendment to the United States Constitution, an officer may "stop and briefly detain an individual without a warrant when the officer has an articulable and reasonable suspicion, based in fact, that the detained person is committing, has committed, or is about to commit a crime." *State v. Sanders*, 310 Kan. 279, 286, 445 P.3d 1144 (2019); see *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); K.S.A. 22-2402(1). An officer may stop a vehicle under K.S.A. 22-2402 and *Terry*, but it "is different than merely approaching an individual in a public place." *State v. Johnson*, 253 Kan. 75, 80, 853 P.2d 34 (1993). An officer must have articulable facts sufficient to constitute reasonable suspicion to stop a moving vehicle. 253 Kan. at 80.

> "'Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . . Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," [citation omitted] that must be taken into account when evaluating whether there is reasonable suspicion.'" *State v. Bannon*, 55 Kan. App. 2d 259, 271-72, 411 P.3d 1236 (2018) (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 [1990]).

To have reasonable suspicion to detain a person, an officer must be able to delineate specific and articulable facts which, when taken together with rational

inferences based on those facts, reasonably warrant that detention. "The suspicion must have "'a particularized and objective basis'" and be something more than 'an unparticularized suspicion or hunch.' [Citations omitted.]" *Sanders*, 310 Kan. at 286. Reasonable suspicion is a somewhat abstract concept, but courts have "'deliberately avoided reducing it to "'a neat set of legal rules."'"" 310 Kan. at 286.

What is reasonable is "'based on the totality of the circumstances.'" *State v. Ton*, 308 Kan. 564, 568, 422 P.3d 678 (2018). Reasonable suspicion is to be viewed in terms as understood by law enforcement officers, and a court must "'judge the officer's conduct in light of common sense and ordinary human experience,'" deferring to the officer's training in being able "'to distinguish between innocent and suspicious circumstances.'" 308 Kan. at 568. The officer must provide "'at least a minimal level of objective justification . . . . [A]n inchoate and unparticularized suspicion or hunch of criminal activity' is not sufficient to establish reasonable suspicion. [Citations omitted.]" 308 Kan. at 568. Reasonable suspicion is analyzed using "an objective standard based on the totality of the circumstances, not a subjective standard based on the detaining officer's personal belief." *State v. Cash*, 313 Kan. 121, 130, 483 P.3d 1047 (2021).

"*Terry* breaks the analysis of the legality of traffic stops into two parts: (1) 'whether the officer's action was justified at its inception' and (2) 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' 392 U.S. at 20." *State v. Smith*, 286 Kan. 402, 407, 184 P.3d 890 (2008). Under the first prong, to stop and detain a person, an officer "must have reasonable suspicion that criminal activity is taking place, has taken place, or is about to take place." 286 Kan. at 407.

Robinson only challenges *Terry*'s first prong—whether Fetrow had reasonable suspicion to stop him. Fetrow stopped Robinson after dispatch informed him of a 911 call involving a suspicious truck that sped off from a neighborhood. Fetrow was informed the

5

truck was a silver Chevrolet and was given the license plate number and a description of the driver. Fetrow located the truck on Highway 50 as reported and followed it for a time, confirming the license plate number, but he did not observe the driver commit any traffic infractions. The truck was traveling 30 miles per hour in a 65-miles-per-hour zone, and Fetrow considered that a safety issue. Fetrow stopped the truck because of the 911 call and the truck's slow speed.

At the suppression hearing, Fetrow admitted he did not observe Robinson commit any traffic infractions and could not name a specific crime he believed Robinson had committed. The district court agreed and found Robinson did not commit a traffic infraction to justify Fetrow's stop. Robinson argues this shows Fetrow lacked reasonable suspicion to stop him.

While it is true Fetrow could not point to a specific crime at the suppression hearing, that is not the reasonable suspicion test. See *Cash*, 313 Kan. at 131-32 ("Given these circumstances, [the officer's] failure to provide examples for subjectively believing the baggie or the safe were suspicious and her failure to expressly testify that she subjectively considered all of the facts collectively to be suspicious did not prevent the district court from considering the baggie and the safe in its reasonable suspicion calculus."). As we have stated, reasonable suspicion is determined under an objective analysis, not an officer's subjective belief, and the district court is to view the evidence presented in a totality of the circumstances by considering all facts and inferences. 313 Kan. at 130, 132.

Here, the objective facts and circumstances were sufficient to justify Fetrow's stop of Robinson. Blaze reported several facts to the dispatcher to warrant an investigatory detention. First, Blaze reported one of his neighbors was scared after speaking to Robinson when Robinson was parked in his truck. Blaze also made comments suggesting Robinson was speeding or driving dangerously.

Other cases provide examples of 911 calls being sufficient to create reasonable suspicion when the officer did not personally observe the commission of a crime. In *State v. Partridge*, 29 Kan. App. 2d 887, 33 P.3d 862 (2001), the officer received a call from dispatch reporting a reckless driver on the highway. The dispatcher informed the officer someone followed the driver and used her cell phone to report the reckless driver, describing the car and giving the car's license plate number. Unknown to the officer, the caller also provided her name to the dispatcher. The officer pulled off on the side of the road and waited for the car to pass. A car passed the officer, matching the color and license plate number. The officer did not personally observe any traffic violation but stopped the car. Partridge moved to suppress, arguing the officer lacked reasonable suspicion to stop him. A panel of our court found reasonable suspicion existed, holding:

> "[W]here a motorist calls a law enforcement agency, identifies herself, and gives firsthand information she is following a car being driven at that very moment on a public highway in such a manner as to endanger the lives of the caller and other motorists, there is an adequate showing of the informant's basis of knowledge and veracity to support reasonable suspicion justifying the stop for further investigation." 29 Kan. App. 2d at 891.

In *City of Norton v. Wonderly*, 38 Kan. App. 2d 797, 172 P.3d 1205 (2007), a motorist and his passenger called 911 on his cell phone and reported a white Chevrolet pickup truck driving on the highway, swerving, spinning its tires, and driving at a high speed. The callers told the dispatcher their names, provided the truck's license plate number, and stated the truck was traveling behind two semitrailer trucks. An officer received the report from dispatch and parked his patrol car to wait for the truck. The truck passed the officer, and the officer followed the truck, making sure the license plate number matched. The officer stopped the truck, despite not observing any traffic violations after following the truck for three minutes. Wonderly argued any reasonable suspicion originating from the 911 call was dispelled by the officer's failure to observe him commit any traffic infractions while following him. The panel held reasonable

suspicion still existed: "Three minutes of good driving within the city limits did not dissipate [the officer's] reasonable suspicion based on the information conveyed to him that Wonderly had driven his truck in a reckless manner." 38 Kan. App. 2d at 804; see *Navarette v. California*, 572 U.S. 393, 397, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014) ("We have firmly rejected the argument 'that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person.' [Citation omitted.]").

In addition to the information Blaze provided, Fetrow observed Robinson driving 30 miles per hour in a 65-miles-per-hour zone. Although driving slowly is not a specific traffic violation, a person may not drive "at such a slow speed as to impede the normal and reasonable movement of traffic . . . ." K.S.A. 8-1561(a). While Fetrow did not observe Robinson impede any traffic at that time, Robinson's slow speed could create a safety issue if another car driving the posted speed limit did approach Robinson, given that Highway 50 is usually a heavily trafficked road.

Reasonable suspicion existed to support Fetrow's investigatory stop of Robinson. Blaze's call provided facts sufficient for Fetrow to stop Robinson and conduct a further investigation. That Fetrow did not observe these actions did not prevent him from possessing reasonable suspicion. The district court did not err in denying Robinson's motion to suppress.

Because reasonable suspicion supported the stop, we need not address the propriety of the district court's alternative conclusion that public safety also justified the stop.

Affirmed.