No. 92-566

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

LEO DAVID McCULLUGH,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Respondent.

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              James A. Manley, Esq., Manley Law Offices,
Polson, Montana

       For Respondent:

              Honorable Joseph P. Mazurek, Attorney General;
Carol E. Schmidt, Assistant Attorney General;
Helena, Montana

              Larry J. Nistler, County Attorney; Robert J. Long,
Deputy County Attorney; Polson, Montana

FILED

JUL 2 0 1993

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: June 17, 1993

Decided: July 20, 1993

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Leo David McCullugh appeals from an order entered by the District Court for the Twentieth Judicial District, Lake County. The court denied McCullugh's petition to vacate an order suspending his driver's license pursuant to § 61-8-402, MCA. We affirm.

The issue is whether the District Court erred in ruling that the arresting officer had probable cause to arrest McCullugh for driving or being in actual physical control of a vehicle while under the influence of alcohol.

On August 21, 1992, at approximately 6 a.m., Lake County Deputy Sheriff Edward Todd observed a truck off the road on old Highway 93 south of Pablo, Montana. The front end of the truck was in the ditch and the rear end was up on the road a little bit. Todd observed McCullugh jacking up the back end of the truck.

After talking to McCullugh, Todd concluded that he was under the influence of alcohol, placed him in the back of his patrol car, and called for assistance from a highway patrol officer. The highway patrol officer checked McCullugh's eyes for nystagmus, noted that his balance was unsteady, and detected a strong odor of alcohol on his breath. He arrested McCullugh for driving under the influence of alcohol.

McCullugh refused to take a breath test. As a result, his driver's license was suspended pursuant to § 61-8-402, MCA. We note that this action under the implied consent law is separate from any DUI prosecution arising out of these events.

2

McCullugh appealed the suspension of his driver's license to District Court, arguing that the highway patrol officer did not have reasonable grounds to believe that he had been driving or was in actual control of a vehicle while under the influence of alcohol. After a hearing, the District Court denied the petition to vacate the suspension of McCullugh's driver's license.

Did the District Court err in ruling that the arresting officer had probable cause to arrest McCullugh for driving or being in actual physical control of a vehicle while under the influence of alcohol?

Section 61-8-403, MCA, provides that, in a petition for review of the revocation of a driver's license for failure to submit to a blood, breath, or urine test,

> the issues shall be limited to whether a peace officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public, while under the influence of alcohol, drugs, or a combination of the two, whether the person was placed under arrest, and whether such person refused to submit to the test.

McCullugh contests only the first of these three issues, whether the arresting officer had reasonable grounds to believe he was in actual physical control of his truck upon a public highway while under the influence of alcohol.

"Reasonable grounds" as used in § 61-8-403, MCA, is synonymous with "probable cause." Boland v. State (1990), 242 Mont. 520, 524, 792 P.2d 1, 3.

3

> The probable cause requirement is satisfied at the time of arrest if the facts and circumstances within the officer's personal knowledge, or upon information imparted to him by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense.

State v. Lee (1988), 232 Mont. 105, 109, 754 P.2d 512, 515.

At the hearing before the District Court, McCullugh testified that his truck became stuck in the ditch hours before Deputy Todd observed him there. McCullugh testified to the following chronology of events: Angry with his wife, he left home a little after 2 a.m. to spend the night at a friend's house. While he was driving to the friend's house, his brakes went out. He turned the truck into the ditch, planning on leaving it there until he could get the brakes fixed. He had not been drinking alcohol up to this point. He then walked to his friend's house in Pablo, where the friend invited him to drink some Black Velvet and to stay for the night. After drinking about half of a fifth of Black Velvet, McCullugh became concerned that the back end of his truck was in the road. He walked back to the vehicle about 6 a.m. to push the back end of the truck off the road. When he was arrested, he did not realize that he did not even have the keys to the truck with him, having left them on his friend's kitchen counter.

McCullugh asserts that the arresting officers should have ascertained whether he had the keys to the truck with him when they arrested him. He also maintains they should have checked the hood of the truck to see if it was warm and should have questioned him

4

as to when he had been driving, when he had been drinking, or whether he had been drinking prior to driving.

At the hearing on McCullugh's petition to vacate the suspension of his driver's license, the highway patrolman testified:

> A.  I was called out roughly 20 after 6:00 or so and was advised that Ed had run across a wreck on Old Highway 93 just south of Pablo.  When I got there, I talked to Ed for a little bit and noted there was a pickup, as Ed stated earlier, nosed into the borrow pit with the tail end sticking out a little bit and there was a jack, it appeared that someone was jacking it up, and the driver, Mr. McCullugh, was in the back of Deputy Todd's patrol car.  I asked Ed about everything, what had took place, if he talked to the driver.  He said momentarily, but he said there obviously was alcohol involved, you could smell it on the driver, and he thought there might be some damage to the vehicle, which there wasn't.  I found no damage to the pickup at all.  I then went and had the driver get out and questioned him.
>
> . . .
>
> Q.  Okay.  Did you question him regarding whether he had been driving?
>
> A.  Yes, I did.
>
> Q.  And what was the substance of that conversation?
>
> A.  He stated he was coming into Pablo from the south, lost his brakes and went into the borrow pit.
>
> Q.  Okay. Did he indicate whether he had just done that or whether that was three hours prior to your arriving?
>
> A.  From what he told me, it was within an hour, so about a quarter to 6:00 or so.
>
> Q.  Okay.  Did he ever make any statements about having been over at Mr. Mather's house?
>
> A.  No, he didn't.  However, he stated that that's where he was going to.

5

Q. Okay. Did he ever -- well, did you ask him about whether he had been drinking?

A. Yes. I asked him if he had had anything to drink and he stated that he had about a case of beer.

The defense points out that, in his written report, the highway patrolman did not write that McCullugh was driving within a hour of when he was arrested. It also cites the following testimony of the highway patrolman on cross-examination:

Q. Now, Patrolman Roth, let me ask you about your testimony here a moment ago. Mr. Long asked you if Mr. McCullugh had made any statements about when he had been driving into Pablo, and I believe that your testimony was that from what you understood or from what you got, it had been within an hour?

A. That's the conversation I had with Mr. McCullugh as we were driving into Polson.

The defense points out that, as they were driving into Polson, McCullugh was already under arrest and that statements made after arrest cannot be used to support a determination of probable cause.

Because of the question as to when McCullugh made the statement that he had been driving within an hour of his arrest, we do not consider that statement in determining whether there was probable cause for arrest. It does not appear that the District Court relied upon that statement, either. At the end of the hearing, the District Court stated:

Both the deputy sheriff and the highway patrolman came on the scene. Here's a single occupant or a single person in control of this vehicle, he obviously had been drinking, it had run into the ditch. There was no reason for them to look for keys or try to ascertain whether the drinking had happened sometime after the accident. . . . [T]he petition is denied.

6

The highway patrolman's testimony demonstrates that Deputy Todd indicated to him that McCullugh was the driver of the truck. When he was arrested, McCullugh did not tell the law enforcement officers his story concerning the delay between his driving and his drinking. He would have this Court put the burden on the officers to elicit the information from him that he had "parked" his truck in the ditch, left the truck and ingested the Black Velvet, and then, several hours later, returned to the truck. He also asks us to put the burden on the officers to make sure that he had the keys to the truck in his possession at the time of his arrest. As the State points out, such a requirement would encourage persons in such situations to "lose" their keys.

McCullugh's story is not the first or most natural conclusion a reasonable person would reach after observing a man obviously under the influence of alcohol trying to move a vehicle stuck on the side of the road. At the time of his arrest, McCullugh did not offer the officers the explanation he now gives. We conclude that the information available to the officers at the time of McCullugh's arrest was sufficient to warrant a reasonable person to believe that McCullugh was in physical control of the truck.

We affirm the ruling of the District Court.

_J. A. Turnage_
Chief Justice

7

We concur:

_John Conway Harrison_

_Troy Trennwith_

_[signature]_

_[signature]_ Justices

8

July 20, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James A. Manley
Manley Law Offices
201 Fourth Ave. E.
Polson, MT  59860

Larry J. Nistler, County Attorney
Robert J. Long, Deputy
Lake County Courthouse
Polson, MT  59860

HON. JOSEPH P. MAZUREK, Attorney General
Carol E. Schmidt, Assistant
Justice Bldg.
Helena, MT  59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy