No. 97-400

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 270

BRIAN W. BUSH,

Petitioner and Appellant,

v.

MONTANA DEPARTMENT OF JUSTICE,

MOTOR VEHICLE DIVISION,

Respondent and Respondent.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Custer,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Matthew J. Wald, Miles City, Montana (argued)

For Respondent:

Joseph P. Mazurek, Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana (argued); Garry P. Bunke, Custer County Attorney, Miles City, Montana

Argued: June 30, 1998

Submitted: June 30, 1998

Decided: November 12, 1998

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. Brian W. Bush (hereinafter Bush) appeals the ruling of the Sixteenth Judicial District Court, Custer County, denying his petition for reinstatement of his driver's license. We reverse.**

## ISSUE

**¶2. Did the District Court err in denying Bush's petition for reinstatement of his driver's license under § 61-8-403, MCA?**

## BACKGROUND

**¶3. On April 4, 1997, at approximately 9:30 p.m., Deputy Sheriff David Power observed a set of swerving car tracks on the highway and followed them to a car stopped in a borrow pit off the shoulder of the road. It was snowing that evening and the highway was covered with a blanket of snow. When the deputy pulled over to investigate, the driver of the vehicle, now known to be Bush, exited the vehicle and met Deputy Power in the roadway.**

¶4. Bush explained to Deputy Power that he had been out test-driving his vehicle after performing some mechanical work on it, when a mechanical failure of unknown origin caused him to lose control of the vehicle and slide off the road. Bush also explained to Deputy Power that he and his passenger had been sitting in the vehicle for approximately forty-five minutes discussing where would be the best place to walk in search of assistance. During this same time, Bush and his passenger each consumed approximately two beers from an 18-pack of beer that Bush had in the vehicle.

¶5. While Bush and Deputy Power were conversing, Deputy Power detected the smell of alcohol on Bush and directed Bush and the passenger in Bush's vehicle to get into the back of the police car. Deputy Power did not perform any field sobriety tests on Bush before driving him to the police station.

¶6. At the police station, Deputy Power read the implied consent advisory form to Bush and requested that Bush undergo a breathalyser test. Bush refused, whereupon his driver's license was seized. Deputy Power later drove Bush back to the abandoned vehicle so that Bush could retrieve his checkbook and post bail, at which time Deputy Power also seized four empty beer cans from inside the vehicle.

## STANDARD OF REVIEW

¶7. A district court's denial of a petition for reinstatement of a driver's license is reviewed by this Court to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Hulse v. State, Dep't of Justice*, 1998 MT 108, ¶ 14, 961 P.2d 75, ¶ 14, 55 St.Rep. 415, ¶ 14. A court's findings are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *Interstate Prod. Credit Ass'n v. De Saye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

## DISCUSSION

¶8. When reviewing the suspension of a driving license under Montana's implied consent law, the district court is limited to considering the three issues set forth in § 61-8-403(4)(a), MCA, which are whether:

(i) a peace officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two;

(ii) the person was placed under arrest; and

(iii) the person refused to submit to the test or tests.

**¶9. Historically, this Court has not been entirely clear or consistent in its interpretation of the provisions outlined in § 61-8-403(4)(a), MCA.** *See Suspension of Driver's License of Blake* **(1986), 220 Mont. 27, 35, 712 P.2d 1338, 1343-44 (4-3 decision)(Sheehy, J., dissenting) ("Incredibly, the State has argued in this case that the question of the lawfulness of the arrest is not to be considered on review in this type of case and this Court, by implication, seems to agree.");** *Gebhardt v. State* **(1989), 238 Mont. 90, 97, 775 P.2d 1261, 1266 (". . . reasonable grounds exist if the facts and circumstances within the personal knowledge of the arresting officer would be sufficient to warrant a reasonable person to believe the motorist is under the influence of alcohol." (citing State v. Lee (1988), 232 Mont. 105, 754 P.2d 512));** *Boland v. State* **(1990), 242 Mont. 520, 524, 792 P.2d 1, 3 ("reasonable grounds" as used in § 61-8-403(4)(a)(i), MCA, is synonymous with the "probable cause" standard required for warrantless arrests (citing State v. Davis (1980), 190 Mont. 285, 289, 620 P.2d 1209, 1212));** *Armstrong v. State, Dep't of Justice* **(1990), 245 Mont. 420, 423, 800 P.2d 172, 174 ("reasonable grounds" to believe the petitioner was under the influence of alcohol is satisfied if there was a particularized suspicion justifying the stop for any legitimate purpose and the officer thereafter developed probable cause to arrest for DUI);** *Grinde v. State* **(1991), 249 Mont. 77, 80, 813 P.2d 473, 475 (holding that the arrest requirement of § 61-8-403(4)(a)(ii), MCA, requires a particularized suspicion of some wrongdoing before a motorist can be stopped and ultimately arrested under probable cause for DUI);** *Jess v. State, Dept. of Justice, MVD* **(1992), 255 Mont. 254, 260, 841 P.2d 1137, 1141 (holding that an officer had reasonable grounds to suspect the petitioner of DUI and reasonable grounds to detain him where a citizen informant's information provided the officer with probable cause to investigate);** *McCullugh v. State* **(1993), 259 Mont. 406, 408, 856 P.2d 958, 959 ("'Reasonable grounds' as used in § 61-8-403, MCA, is synonymous with 'probable cause.'").**

**¶10. However, despite this Court's previously unpredictable and often contradictory application of § 61-8-403(4)(a), the Court has recently generated a cohesive line of**

cases which more clearly define the purpose and scope of the language of the statute. These cases hold that the standard for finding "reasonable grounds," under § 61-8-403(4)(a)(i), MCA, is identical to the standard for finding a "particularized suspicion," as that term has been defined and applied under § 46-5-401, MCA. *Hulse*, ¶ 12; *Seyferth v. State Dep't of Justice* (1996), 277 Mont. 377, 384, 922 P.2d 494, 498 ; *Anderson v. State Dep't of Justice* (1996), 275 Mont. 259, 263, 912 P.2d 212, 214; *Bauer v. State* (1996), 275 Mont. 119, 124, 910 P.2d 886, 889.

¶11. Therefore, the first issue to be determined by the district court upon a petition for review of the seizure of a driver's license under § 61-8-402, MCA, is whether the arresting officer possessed a particularized suspicion that the individual in question had been driving or was in actual physical control of a vehicle upon ways of this state while under the influence of alcohol or drugs; such a suspicion may be formed by an experienced law enforcement officer on the basis of reasonable inferences drawn from objective data. *State v. Lee* (1997), 282 Mont. 391, 394, 938 P.2d 637, 639; *State v. Gopher* (1981), 193 Mont. 189, 193, 631 P.2d 293, 296. Furthermore, we take this opportunity to clarify that to the extent our prior cases conflict with the interpretation of § 61-8-403(4)(a)(i), MCA, set forth in the *Bauer* line of authority, those cases are hereby expressly overruled.

¶12. The second issue to be determined by the District Court is whether the person was under arrest at the time the breath sample was requested. Not only must the person have been under actual arrest, but the arrest itself must comply with the constitutional and statutory requirements for a warrantless arrest, including the existence of probable cause. Section 46-6-311, MCA; *Hulse*, ¶ 13. Probable cause exists if at the time of the arrest there were sufficient facts and circumstances within the officer's personal knowledge to warrant a reasonable person's belief that the suspect had committed an offense. *State v. Lee* (1988), 232 Mont. 105, 109, 754 P.2d 512, 515.

¶13. The third issue to be determined by the District Court is whether the person seeking reinstatement of the license had in fact declined to submit to a breath test when requested to do so, but neither this nor the first issue are in dispute in this case. The parties agree that upon seeing the swerving tracks on the highway and the vehicle sitting in the barrow pit, Deputy Power had reasonable grounds to believe that the driver may have been operating the vehicle while under the influence of alcohol. Likewise, Bush concedes that he did in fact refuse to perform the breath test.

¶14. The pivotal issue, then, comes under § 61-8-403(4)(a)(ii), MCA, which requires that Bush was under arrest at the time the breath sample was requested. If Deputy Power lacked probable cause to arrest Bush, then the arrest was invalid and cannot satisfy the statutory requirements for seizure of a driver's license under the implied consent laws. In its Findings of Fact, Conclusions of Law and Order, the District Court held that

. . . Deputy Power already had reasonable grounds to believe Mr. Bush was driving under the influence. For purposes of making an arrest and requesting a breathalyser, that is all that is required . . . Having reasonable grounds to believe Mr. Bush was driving under the influence, Deputy Power could lawfully arrest Mr. Bush and request Mr. Bush to take the breathalyser.

¶15. In reaching its conclusion, the District Court erroneously merged the requirement of "reasonable grounds" under § 61-8-403(4)(a)(i), MCA, with the requirement of probable cause to arrest mandated by § 61-8-403(4)(a)(ii), MCA. Although an investigative stop of the kind authorized by § 61-8-403(4)(a)(i), MCA, and § 46-5-401, MCA, requires only a particularized suspicion of criminal activity, a warrantless arrest requires something more than mere suspicion; it requires a belief, reasonable under the facts and circumstances within an officer's personal knowledge, that an offense has been committed. *Hulse*, ¶ 13.

¶16. A review of the record reveals that the facts in this case were insufficient to give rise to probable cause to arrest Bush for DUI. Although Deputy Power testified that he smelled alcohol on Bush during the conversation that took place immediately after his arrival on the scene, the incident report prepared by Deputy Power indicates that the smell of alcohol on Bush was not a strong one and that Bush displayed no other visible signs of intoxication in the way he walked or spoke. Additionally, Deputy Power did not conduct any field sobriety tests to determine the extent to which Bush was actually under the influence of alcohol at the time of his arrest.

¶17. The State argues that it would not have been reasonable to expect Deputy Power to conduct a series of field sobriety tests in the snowy and windy conditions that existed on that night. However, as Bush points out, there are a number of field sobriety tests that could easily have been performed within the confines of the deputy's vehicle, including the hand clap test, the finger count test, or requesting Bush to recite the alphabet; yet none of these tests were administered.

¶18. The State also argues that under our holding in *McCullugh*, Deputy Power had no duty to make any inquires which would either verify Bush's statements or rule out Bush's story as a plausible explanation for the cause of the accident. *McCullugh*, 259 Mont. at 410, 856 P.2d at 595-60. This argument is unpersuasive, because the result in *McCullugh* is distinguishable on its facts from the case *sub judice*. In *McCullugh,* the plaintiff's explanation that the brakes on his truck had gone out while driving to a friend's house hours before, and that he had only begun drinking in the interim between the time he abandoned the vehicle and when he returned to it sometime later, was never communicated to the arresting officer. Because McCullugh first proffered this explanation during proceedings before the district court, the arresting officer could not have taken any of that information into account in determining whether probable cause existed at the time of the arrest.

¶19. In contrast, Bush relayed to Deputy Power the reason for the condition of his vehicle immediately upon Deputy Power's arrival at the scene. Bush also volunteered the fact that he and his passenger had consumed a couple of beers while sitting in the vehicle subsequent to the accident. While Deputy Power was not necessarily required to accept this explanation on its face, neither is he allowed to wholly disregard it when the other facts and circumstances of the situation make this explanation appear plausible. In particular, the fact that Bush did not appear by his movements or speech to be impaired in any way, and that Deputy Power admitted Bush did not smell strongly of alcohol, would mitigate against a finding of probable cause to arrest Bush for DUI unless some other indicia of intoxication were present. Since Deputy Power declined to perform any field sobriety tests, the record does not reflect any such indicia in this case.

¶20. In *Hulse*, this Court recognized that an investigative stop can take on the quality of an escalating situation leading to probable cause based on additional information gleaned by the law enforcement officer during the course of the investigation. *Hulse*, ¶ 40. By the same reasoning, however, additional information obtained during the investigative process can also have the effect of eliminating probable cause to arrest for DUI, even where a valid particularized suspicion existed which would have initially justified the stop.

¶21. There is some discrepancy in the record regarding whether Deputy Power noted the presence of the four empty beer containers in the vehicle prior or subsequent to the time of Bush's arrest and whether that fact could have been relied upon by

**Deputy Power in determining if he had probable cause to arrest Bush. We note that the record is not clear on this point. However, this fact is not crucial to our analysis, because the presence of the containers comports with Bush's explanation of events, and so neither supports nor contradicts a conclusion that Bush had been driving while under the influence of alcohol for purposes of generating probable cause to arrest him.**

**¶22. Because our review of the record convinces us that Deputy Power did not have probable cause to arrest Bush at the time the breathalyser sample was requested, we hold that Bush's driver's license was not properly seized pursuant to § 61-8-402, MCA, and the decision of the District Court is reversed on those grounds.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART